Luis Grass RODRIGUEZ, Isora Hernandez–Hernandez, on behalf of themselves and all others similarly situated; et al., Plaintiffs,

v.

Tom RIDGE, Department of Homeland Security; Colin Powell, Secretary of State; Luis Aguirre, Commissioner of the Immigration and Naturalization Service; John Ashcroft, Attorney General of the United States; and the District Director of the Immigration and Naturalization Service Local Office in Miami, Florida, Defendants.

No. 04–20285–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 11, 2004.

ban nationals interdicted on the high seas. Because the Court lacks jurisdiction to review the executive function, in a foreign country or on the high seas, the motion for a preliminary injunction is DENIED.

## I. BACKGROUND

On December 3, 2003, Plaintiff Luis Grass Hernandez underwent a refugee applicant pre-screening interview. He was interviewed in Havana, Cuba, by Sylvia Pailliotet, U.S. Department of State, U.S. Interests Section. The purpose of such refugee applicant pre-screening interviews is to determine if the case should be referred to the Department of Homeland Security (DHS) for a refugee interview and adjudication. Plaintiff Luis Grass Hernandez was referred to DHS, but did not appear for his scheduled interview on January 20, 2004. As a result, his refugee application has not yet been adjudicated.

Shortly thereafter, on February 3, 2004, Plaintiff Luis Grass Hernandez, joined by Plaintiffs Isora Hernandez–Hernandez and Angel Luis Grass Hernandez[1], and eight (8) other Cuban nationals were interdicted by the United States Coast Guard while attempting to emigrate to the United States on a watercraft fashioned from a 1959 Buick. The interdiction occurred in international waters, approximately 25 miles south of Vaca Key, Marathon, Florida. However, while onboard the Coast Guard cutter, Plaintiffs entered within twelve nautical miles of the United States coastline on three separate occasions. At present, Plaintiffs Luis Grass Hernandez, Isora Hernandez–Hernandez and Angel Luis Grass Hernandez are onboard a Coast Guard Medium Endurance cutter in international waters.

William J. Sanchez, Luis Fernandez, Wilfredo O. Allen, Miami, FL, Counsel for Plaintiff.

Dexter Lee, AUSA, Counsel for Defendant.

## ORDER DENYING INJUNCTION

MORENO, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Emergency Motion for Declaratory, Injunctive and Mandatory Relief to enjoin the various executives of the federal government from repatriating Cu-

---

1. An Amended Complaint also includes the other watercraft passengers, relatives of the asylum-seekers, as well as Movimiento Demo-cracia, Inc., a non-profit organization that supports Cuban refugees.

An Asylum Officer has conducted interviews of the Plaintiffs and the other eight watercraft passengers. On February 10, 2004, the other eight watercraft passengers were repatriated to Cuba because a determination was made that none of the eight additional passengers made a sufficient showing of credible fear to justify the granting of political asylum, pursuant to the 1995 Migration Accord between the United States and Cuba. With respect to Plaintiff Luis Grass Hernandez and his family, DHS has determined that he has demonstrated a credible fear of persecution. As a result, DHS intends to transfer the Grass family to the U.S. Naval Base, Guantanamo, Cuba, for a detailed examination of his protection concerns.

The Plaintiffs seek judicial review of any and all executive decisions regarding their repatriation. They allege a violation of the Equal Protection Clause of the Unites States Constitution because of an alleged discrepancy in the percentage of petitions for asylum that are granted for interdicted passengers compared with the percentage granted for those who have successfully reached United States soil.

## II. LEGAL STANDARD

In order for a district court to issue a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts v. Consorcio Barr,* 320 F.3d 1205, (11th Cir.2003), *Siegel v. Lepore,* 234 F.3d 1162, 1163 (11th Cir.2000), *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998). Moreover, the 11th Circuit has stated that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to each of the four prerequisites. *McDonald's Corp.,* 147 F.3d at 1306; *see also Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975)(grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).

## III. DISCUSSION

Defendants argue that the Plaintiffs have failed to establish a substantial likelihood of success on the merits because this Court has no jurisdiction to review the repatriation determinations. In response, it appears from the Plaintiffs' motion that they are advancing two lines of argumentation to urge this Court to find jurisdiction in this matter. First, Plaintiffs contend that by conducting a refugee applicant pre-screening interview in Havana, Cuba, the State Department has taken an action that is subject to judicial review. Second, Plaintiffs assert that because Plaintiffs did enter United States territorial waters on three occasions subsequent to their interdiction, they should be deemed to have entered the United States and as a result, deserve the same constitutional and statutory protections as immigrants who set foot on United States soil.

### A. Pre–Screening Interview

■ By conducting a pre-screening interview, pursuant to the Immigration and Nationality Act (INA), Plaintiffs assert that this Court has jurisdiction to review the Government's compliance with the INA through the Administrative Procedures Act. Although creative, this Court simply cannot sustain such a proposition in the face of clear contrary legal precedent.

Through the INA, Congress granted the President the authority to admit refugees from foreign countries within certain prescribed numerical limits. 8 U.S.C. § 1157(a). In addition, Congress granted the President the authority to determine what constitutes refugees for purposes of the statute. § 1157(e). However, § 1157 does not provide for judicial review. The Eleventh Circuit has explicitly held that "the absence of procedures for judicial review provided in § 1157, demonstrates a Congressional intent to preclude judicial review at the behest of aliens beyond the borders of the United States." *Haitian Refugee Center, Inc. v. Baker,* 953 F.2d 1498, 1506 (11th Cir.), *cert. denied,* 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). As a result, because the prescreening interview was conducted pursuant to § 1157 and the Eleventh Circuit is clear that no judicial review is available for such proceedings, this Court is left with no alternative but to reject Plaintiffs argument that such an interview is an appropriate subject of judicial review.

### B. Entry Into the Territorial Waters of the United States

■ Plaintiffs next urge the Court to hold that entry into the territorial waters of the United States constitutes entry into the United States for purposes of immigration. Defendants counter that entry into the United States for immigration purposes is only accomplished through arrival at the physical border.

■ On the issue of entry into the United States, the Supreme Court and the Eleventh Circuit have held that Government is bound by the laws governing the repatriation of refugees only when the refugees are at or within the borders of the United States. *Sale v. Haitian Centers Council, Inc.,* 509 U.S. 155, 160, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993), *Cuban American Bar Association v. Christopher,*

43 F.3d 1412, 1426 (11th Cir.1995). Further, in the INA, Congress describes who is an "applicant for admission" and the procedures that must be taken with respect to such persons. In particular, Section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1) reads:

(1)Aliens Treated as Applicants for Admission.-An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international *or United States waters* ) shall be deemed for purposes of this Act an applicant for admission.

A fair reading of Section 235(a)(1) of the INA reveals that Congress could not have intended that mere entry into United States waters is sufficient to accord the status of "applicant for admission". The Section clearly states that an alien interdicted in United States waters is considered an "applicant for admission" only when he is brought to United States soil. It would be contrary to the established rules of statutory construction to read otherwise. The distinction between an "applicant for admission" and other persons is important because persons not deemed "applicants for admission" are not entitled to removal proceedings, asylum applications or withholdings of deportation. See Sections 235(b) and 240 of the INA.

In addition to the clear import of the statute's language, the Second, Third, and Fourth Circuits have each held that entry into United States waters does not constitute entry into the United States for purposes of the Immigration and Nationality Act. *Zhang v. Slattery,* 55 F.3d 732, 754 (2d Cir.1995), *Yang v. Maugans,* 68 F.3d 1540, 1548 (3d Cir.1995), *Chen Zhou Chai*

*v. Carroll,* 48 F.3d 1331, 1343 (4th Cir. 1995).

Further, Plaintiffs' reliance on criminal statutes that confers jurisdiction upon the courts to try smugglers of drugs on vessels in the high seas are not relevant. Congress has not conferred such jurisdiction to decide a case such as this.

## IV.  CONCLUSION

The Plaintiffs ask this Court to go beyond the law enacted by Congress and enforced by the executive branch. It is difficult to imagine a more creative way to escape the dictatorial regime that, is Cuba. The ingenuity, hard work and motivation behind the design and execution of fashioning a watercraft from a 1959 Buick should perhaps be a factor considered by the executive branch that often grants visas to exceptional individuals such as baseball pitchers, artists and scientists. The legislative and executive branches consider those factors in the spirit of the Old Testament edict that:

> You shall treat the alien who resides with you no differently than the natives from among you; have the same love for him as yourself for you too were once aliens. *Leviticus* 19:34

However, the judicial branch is restrained by the statutes and the Constitution. A federal judge does not have the authority to admit aliens, even imaginative, hardworking, brave individuals, as these plaintiffs appear to be. The United States Constitution's protections do not extend beyond America's borders, *see Johnson v. Eisentrager,* 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), and any change in the so-called "dry foot/wet foot" policy is left to the legislative and executive branches. Accordingly, it is

**ADJUDGED** that Plaintiffs' Motion for Injunction is **DENIED** for lack of jurisdiction. .